UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

COMMIL USA, LLC,

                Plaintiff,                    CIVIL ACTION NO. 2:07-cv-341-CE

      v.

CISCO SYSTEMS, INC.

                Defendant.

**DEFENDANT CISCO SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR JUDGMENT AS MATTER OF LAW OF NON-INFRINGEMENT**

## <u>TABLE OF CONTENTS</u>

I.    STATEMENT OF ISSUE .................................................................................................. 1

II.   INTRODUCTION ........................................................................................................... 1

III.  LEGAL STANDARD ...................................................................................................... 2

IV.   ANALYSIS ...................................................................................................................... 3

      A.    Cisco Is Entitled to Judgment of Non-Infringement as a Matter of Law ............... 3

              *1.    The Accused Products Do Not Run a Separate "Instance" of a
                  Divided Short-Range Communication Protocol for Each
                  Association of a Mobile Unit* ................................................................... 3

              *2.    The 802.11 Protocol in Combination With the LWAPP Protocol Is
                  Not a "Short-Range" Protocol* ................................................................ 6

              *3.    The Accused Products Run Real-Time Functions at the Controller* ....... 7

      B.    Commil Cannot Show Any Act of Direct Infringement ........................................ 9

      C.    There Is No Evidence that Cisco and its Customers Jointly Infringe the '395
          Patent .................................................................................................................... 10

      D.    Cisco Is Not Liable as a Matter of Law for Induced or Contributory
          Infringement ......................................................................................................... 12

V.    CONCLUSION ............................................................................................................. 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361 (Fed. Cir. 2003) ............................................. 15

*Anthony v. Chevron USA, Inc.*, 284 F.3d 578 (5th Cir. 2002) ........................................................ 2

*BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) ......................................... 11

*Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*, 243 Fed. Appx. 603 (Fed. Cir. 2007) ................................................................................................................. 12

*DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006)....................................... 12, 14

*Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811 (S.D. Tex. 2008).......................................... 11

*EpicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608 (E.D. Tex. 2007) ....................................................................................................................... 14, 15

*Golden Hour Data Sys., Inc. v. Emscharts, Inc.*, Civ. A. No. 2:06-CV-381, 2009 WL 943273 (E.D. Tex. 2009) ................................................................................................ 11

*Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617 (5th Cir. 2008) ............................................... 2

*Hewlett-Packard Co. v.  Bausch & Lomb Inc.*, 909 F.2d 1464 (Fed. Cir. 1990)......................... 12

*Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, No. SA-03-CV-832-WRF, 2007 WL 1113088 (W.D. Tex. April 4, 2007) ................................................................................ 15

*MacArthur v. Univ. of Tex. Health Ctr. at Tyler*, 45 F.3d 890 (5th Cir. 1995) ............................ 2

*MIT v. Abacus Software, Inc.*, Civil Action No. 5:01-CV344, 2004 WL 5268128 (E.D. Tex. Aug. 24, 2004) ........................................................................................... 12, 16

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) ............................. 11

*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995) ................................... 3

*Summit Tech., Inc. v. Nidek Co., Ltd.*, 363 F.3d 1219 (Fed. Cir. 2004)......................................... 2

*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001)......................... 3

*Union Pacific Res. Co. v. Chesapeake Energy Corp.*, No. Civ. A 4:96-CV-726-Y, 1998 WL 34359124, at *5 (N.D. Tex. May 20, 1998) ........................................................... 16

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009) ..................................... 12

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) ............................... 9

*Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348 (Fed. Cir. 2003)....................................... 15

## FEDERAL STATUTES

Fed. R. Civ. P. 50(a) ............................................................................................................... 1, 2

Pursuant to Federal Rule of Civil Procedure 50(a), Defendant Cisco Systems, Inc. ("Cisco"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of Motion for Judgment as a Matter of Law of Non-Infringement of United States Patent No. 6,430,395 (the "'395 Patent").

## I.     STATEMENT OF ISSUE

Cisco moves for judgment as a matter of law that it has not infringed the asserted claims of the '395 Patent and that it did not induce or contribute to infringement of the asserted claims of the '395 Patent.

## II.     INTRODUCTION

Commil USA, LLC ("Commil") has failed to introduce legally sufficient evidence to support a finding of infringement, because it has not shown that the accused products practice every step of the claimed method.  The accused Cisco products do not (i) run an instance of the low- and high-level protocol supporting each connection of an access point with a mobile unit; (ii) operate using a "short-range communication protocol"; or (iii) split a short-range communication protocol based on accurate time synchronization or real-time requirements. Cisco has introduced uncontroverted evidence that the accused products *do not* and *cannot* practice certain required elements of the claimed method.  On this basis alone, Cisco is entitled to judgment of non-infringement as a matter of law.

In addition, even if the accused products could perform all the steps of the claimed method, all of the evidence clearly that Cisco does not itself perform each step.  Rather, Cisco designs the accused products and is responsible for dividing the communication protocol, while end-customers of the products actually run the protocol.

Moreover, Commil has not met its burden of proof to show that Cisco and its customers jointly infringe the claims in the '395 Patent. Commil has not put forth legally sufficient evidence to show that Cisco's customers use Cisco's products in an infringing manner in the first instance, nor has Commil adduced evidence demonstrating that Cisco acted as a "mastermind" that controlled or directed its customers' allegedly infringing use.

Finally, Commil has failed to put forth sufficient evidence to support a verdict of indirect infringement. In addition to failing to adduce any evidence of a predicate act of direct infringement, Commil has not introduced evidence showing that Cisco possessed the requisite intent for a claim of induced or contributory infringement. Accordingly, Cisco is entitled to judgment as a matter of law that it is not liable for induced or contributory infringement.

For all of the foregoing reasons, Cisco is entitled to judgment as a matter of law of non-infringement.

## III.   LEGAL STANDARD

Rule 50(a) provides for judgment as a matter of law where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). As JMOL is a procedural issue not unique to patent law, Fifth Circuit law applies. *See Summit Tech., Inc. v. Nidek Co., Ltd.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). Under Fifth Circuit law, the party opposing the motion for judgment as a matter of law must establish a conflict in substantial evidence on *each* essential element of their claim in order to survive the motion. *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002). A mere scintilla of evidence is insufficient to present a question for the jury. *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 622 (5th Cir. 2008) (citing *MacArthur v. Univ. of Tex. Health Ctr. at Tyler*, 45 F.3d 890, 896 (5th Cir. 1995)).

IV.   <u>ANALYSIS</u>

A.   **Cisco Is Entitled to Judgment of Non-Infringement as a Matter of Law**

Cisco is entitled to judgment of non-infringement as a matter of law because

Commil has not introduced legally sufficient evidence for a reasonable jury to find infringement.

In order to support a finding of infringement, there must be sufficient evidence that the accused

products practice every element or step of the properly construed claims.  *See Telemac Cellular*

*Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001); *Southwall Techs., Inc. v.*

*Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).   As the absence of any one limitation

avoids infringement, if the evidence is insufficient on even one element, Cisco is entitled to

judgment of non-infringement.  *See Southwall Techs.*, 54 F.3d at 1575-76.

1.   *The Accused Products Do Not Run a Separate "Instance" of a Divided Short-Range Communication Protocol for Each Association of a Mobile Unit*

The only Commil witness to testify on infringement, Joseph McAlexander, stated

that the "short range communication protocol" is a combination of the LWAPP and 802.11

protocols.[1]  In his direct examination he described "running the instance" of this protocol as

follows:

> Stands to reason that if you've taken the communication protocol and divided it between low and high level, the high level or portions of the high level are resident on the controller or the switch. Then when the communication occurs, part -- since the entirety of it was being run originally before the split at the base station, now what you're doing is running an instance of it at the base station and a corresponding instance of the high level at the switch.[2]

---

[1]   McAlexander Testimony, Trial Tr. Vol. 2 at 97:10-14, May 11, 2010 ("Q. So the combination of LWAPP and 802.11 is what you contend is the short-range communication protocol divided in the accused products, correct?  A. Yes.").

[2]   McAlexander Testimony, Trial Tr. Vol. 2 at 43:24-44:7, May 11, 2010.

Incredibly, Mr. McAlexander entirely disregards the Court's construction that, "*for each connection* of a mobile unit with a Base Station," the system runs "at the Base Station a copy of the low-level protocol" and "at the Switch a corresponding separate copy of the high-level protocol"—in each case "*supporting only that connection.*"[3]

This is no surprise.  Cisco established during cross-examination that the accused products run only *one* copy of the 802.11 protocol, supporting *all* mobile units communally.  For example, Commil's expert testified that the "beacon" function, which he admitted is part of the low-level 802.11 protocol,[4] works by broadcasting a single message to all mobile devices associated with that particular access point.[5]  Because these "beacon" broadcasts are required to initiate any association, as McAlexander explained in his testimony,[6] and continue to be sent to and used by mobile devices after the devices are associated, the beacons are necessarily part of a communication protocol—the "set of procedures required to *initiate and maintain*

---

[3]    Docket No. 193 (*Markman* Order at 2).

[4]    McAlexander Testimony, Trial Tr. Vol. 2 at 90:9-18, May 11, 2010 ("Q. Sir, would you agree with me that the beacon function is part of the low-level protocol in the accused Cisco products?  A. Can you be more specific as to beacon function?  Q. Sure.  The beacon generation function.  A. Yes, yes.  Q. Okay.  And it is part of the low-level protocol, correct?  A. That is correct.").

[5]    McAlexander Testimony, Trial Tr. Vol. 2 at 17:21-22, May 11, 2010 ("What occurs is the access point is generating what's called a beacon. This beacon is a signal that is broadcast to whoever can pick it up."); *id.* Trial Tr. Vol. 2 at 90:22-91:7, May 11, 2010 ("Q. And whether there is one, tens, or hundreds of mobile units connected with that access point, there is only one beacon generation that supports all of those mobile units, right?  A. There's one beacon generation that's broadcast to all of the units.  Q. So the beacon is an example of a function in the Wi-Fi protocol that supports many devices at once, correct?  A. That supports many devices at once prior to connection.").

[6]    McAlexander Testimony, Trial Tr. Vol. 2 at 18:17-21, May 11, 2010 ("[W]hat occurs is the access point, the mobile unit that just came into the room, has now established by a beacon, a probe request, and a probe response and a connection. At that point, they're connected and they can now communicate.").

communication between two or more devices."[7]  But the beacon broadcast is only the most

obvious low-level protocol task that supports multiple connections with mobile units.  In fact, the

*entire* 802.11 protocol stack supports multiple connections with mobile units in Cisco's products

at the same time.

        Mr. McAlexander also argued to the jury that the accused products maintain data

or instructions about the current state of the association of a mobile unit.[8]  This is notable for two

reasons.  First, if this vaguely referenced data is an "instance" of the set of procedures Commil

must identify to satisfy this claim element, the argument is contrary to McAlexander's argument

in his expert report that the "state of the [LWAPP/CAPWAP] state machine" is the instance.[9]

The argument should be disregarded because it is contrary to his expert report, in which case

there is no evidence in the record that the Cisco products run an instance of the low/high level

protocols supporting each individual mobile unit.

---

[7]    Docket No. 193 (*Markman* Order at 1).

[8]    *See* McAlexander Testimony, Trial Tr. Vol. 2 at 21:24-22:8, May 11, 2010 ("[T]he access point maintains a record – it's called the current state – that's associated with that communication connection, and it can go back and forth between the two.  And what happens is the access point communicates with the gentleman sitting down, receives a certain set of information for a period of time, then – excuse me – then changes over and remembers the state where it was with the person who was walking, and begins to transact information, transfer it with that person.").

[9]    As set out in Cisco's motion *in limine* No. 1 and discussed during pretrial proceedings, Cisco maintains its objection to McAlexander's continued attempts to go far beyond the contention in his expert report that, "[s]ince each packet related to communication with each mobile unit is independently processed, then the state of the *LWAPP* state machine in the Cisco **Base Station** (Access Point) while processing each particular packet is the instance of the low-level protocol at the Base Station connected with the mobile unit." DTX 1245-0176 (McAlexander Opening Expert Report). The closest Mr. McAlexander came during his testimony was the concession on cross-examination that his (new) infringement theory rests on the contention that "[t]he access point can only practice only one – can only practice or – or functionally execute one packet at a time." McAlexander Testimony, Trial Tr. Vol. 2 at 91:20-25.  McAlexander never discussed the state of the LWAPP/CAPWAP state machine in his testimony.

More fundamentally, however, storing information about a mobile device is simply not the same thing as running a separate copy of the set of procedures that make up the communication protocol supporting the connection with the device.  This issue was resolved six months ago when the Court issued its claim construction order.  Commil continues to cling to their rejected construction because they know that the accused products do not run an instance of the divided protocol *for each connection* of a mobile unit with an access point, as the '395 Patent requires.

In any case, after three years of litigation, Mr. McAlexander could not articulate what he considers to be the "instance" of the divided protocol for the jury.  Cisco respectfully submits that no reasonable jury could find the Cisco products meet this element of Claim 1 of the '395 Patent, and Cisco is entitled to judgment of non-infringement as a matter of law.

> **2.      The 802.11 Protocol in Combination With the LWAPP Protocol Is Not a "Short-Range" Protocol**

Nor has Commil introduced evidence to show that the accused products implement a "short-range" protocol.  In construing the term "short-range communication protocol," the Court noted that "one of skill in the art would be able to ascertain the boundaries" of the term.[10]  At trial, Commil's expert testified that a communication protocol reaching "multiple miles" cannot be short-range.[11]  He also admitted that Cisco customers have implemented the accused communication protocol—LWAPP plus 802.11—over hundreds of

---

[10]     Docket No. 193 (*Markman* Order at 1).

[11]     McAlexander testimony, Trial Tr. Vol. 1 at 139:14-139:17, May 11, 2010 ("No.  If you're talking about a cell phone that communicates with cell towers and the normal understood meaning of cell phones, no, that's not short-range.  That's multiple miles."); *id.* at 140:1-2 ("Where short range is significantly less than a cell, which is going to be multiple miles."); McAlexander testimony, Trial Tr. Vol. 2 at 98:11-13, May 11, 2010 ("Q. Okay. Three miles would not be short-range, would it?  A. That's correct; it would not be.").

miles.[12]  It is uncontroverted that Cisco customers have used the accused controllers and access points to conduct communications spanning across the country.  There is no dispute that LWAPP *in combination with* 802.11 is, at least in part, a communication protocol.  Indeed, 802.11 plus LWAPP/CAPWAP is *the* communication protocol that Commil's own infringement expert identified as the "short-range communication protocol" described in the '395 Patent.

During portions of his testimony, McAlexander attempted to refine his definition of "short-range communication protocol" to be limited only to that portion of the protocol which operates between the mobile device and the access point—a convenient change for purposes of averting the "short-range" issue, but entirely inconsistent with his testimony that LWAPP/CAPWAP plus 802.11 *is* the "short-range communication protocol."[13]

In short, no reasonable jury could find that the accused communication protocol— 802.11 in combination with LWAPP/CAPWAP—is the "short-range" communication protocol as that term is used in the patent.

### 3.    The Accused Products Run Real-Time Functions at the Controller

Cisco is also entitled to judgment of non-infringement as a matter of law for the third separate and independent reason that the accused products do not run real-time tasks *only* at

---

[12]    McAlexander testimony, Trial Tr. Vol. 2 at 103:24-104:18, May 11, 2010 ("Q. Okay. And you understood that they were running at the controller in Memphis LWAPP plus 802.11, right?  A. That is as I recall, correct, yes.  Q. And you understood that at the APs scattered all over the country that they were running LWAPP plus 802.11?  A. At the controller, that potion [sic] of the high-level protocol was -- Q. I'm sorry, sir.  I asked you about access points.  So you understood at the – at the access points – we already talked about the controller.  A. Okay.  Q. At the access points that are scattered all around the country, you understood -- when you studied this document and figuring out your expert report, you understood that each one of those access points was running 802.11 plus LWAPP, right?  A. That is correct, yes.").

[13]    McAlexander Testimony, Trial Tr. Vol. 2 at 97:10-14, May 11, 2010 ("Q. So the combination of LWAPP and 802.11 is what you contend is the short-range communication protocol divided in the accused products, correct?  A. Yes.").

the access point.  According to the Court's construction, the term "high-level protocol" means "a protocol for performing tasks that do not require accurate time synchronization or real time capabilities."[14]  The only Commil witness who testified on infringement at trial, McAlexander, agreed that all real-time tasks must be run at the Base Station.[15]  Thus, to meet this claim limitation, there is no dispute that Commil must show the high-level protocol running at the controller consists only of tasks that do not require real-time capabilities.[16]

But evidence presented during Commil's own case demonstrates that the accused devices do, in fact, run important real-time functions at the controller.  Commil's expert, McAlexander, admitted that real-time LWAPP functions—which are part of the "short-range communication protocol" he identified here—are run at the controller.[17]  McAlexander also

---

[14]     Docket No. 193 (*Markman* Order at 2).

[15]     McAlexander Testimony, Trial Tr. Vol. 2 at 33:16-34:1, May 11, 2010 ("[Tasks] that are real time *must* be, according to the claimed invention, practiced and found at the access point, so I design the system that way.  And those that I determine not to have to require real-time protocol communication can then be at the user's decision either placed at the controller or at the access point.  Q. And is that specific thing stated in the '395 patent? A. It's exactly what's required by the claim, and it is well-supported by the specification of the patent.") (emphasis added).

[16]     McAlexander Testimony, Trial Tr. Vol. 2 at 112:22-24, May 11, 2010 ("A. If there were real-time functions on the 802.11 MAC that is run on the controller, that is not an infringing product.")

[17]     McAlexander Testimony, Trial Tr. Vol. 2 at 121:9-23, May 11, 2010 ("Q. All right. So the controller is doing an LWAPP function that's real-time, right?  A. It states that it's doing a real-time radio resource management. That's all it says.  Q. And you -- we just agreed that real-time radio resource management is something covered in LWAPP, right? A. But not in the 802.11 short-range protocol split MAC.  Q. You're not answering my question, sir.  LWAPP does cover real-time radio resource management, right?  A. I believe the real – I think the LWAPP program, in its entirety, covers also management of the resource.").

admitted that authentication—a task the patent identifies as real-time[18]—is run at the controller in Cisco's products.[19]  McAlexander sought to evade this un-refuted evidence on the stand by arguing that the "short-range communication protocol" is only the ***MAC-layer*** of the 802.11 protocol—a *further* narrowing of his interpretation of the term "short-range communication protocol."  McAlexander was required to make fundamentally inconsistent arguments such as this one because, otherwise, he would have had to concede that Cisco does not split its protocol based on "real-time" requirements.

In sum, the evidence establishes that Cisco runs real-time tasks in the controller.[20]  Because Commil has not met its burden to prove otherwise, Cisco respectfully requests a judgment of non-infringement as a matter of law.

### B.      Commil Cannot Show Any Act of Direct Infringement

It is axiomatic that a claim for direct infringement requires a party to perform each and every step of the claimed method.  *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).  Here, the evidence presented by Commil demonstrates that the '395 Patent claims at least a two-step method.  McAlexander testified that the '395 Patent claims

---

[18]     McAlexander Testimony, Trial Tr. Vol. 2 at 117:4-7, May 11, 2010 ("Q. That's where the Arazi patent says to do authentication. It tells the people reading the patent that that is a real-time function, correct? A. For Bluetooth, that's correct.").

[19]     McAlexander Testimony, Trial Tr. Vol. 2 at 123:14-18, May 11, 2010 ("Q. Authentication isn't something that's done by the accused Cisco products in the low-level protocol, is it?  A. No, because it's not part of the 802.11 spec as to low-level protocol.").

[20]     McAlexander Testimony, Trial Tr. Vol. 2 at 120:23-121:12, May 11, 2010 ("You didn't highlight the line right above it, did you, sir, where it says that the controller does real-time? You didn't highlight that, did you, sir?  A. No, because that has nothing to do with the 802.11 short-range protocol MAC.  Q. So real-time resource management, in your testimony, is not related to 802:11?  A. That's not a 802.11 MAC split.  Q. And it's not related to LWAPP?  A. I believe that there is a part of LWAPP that covers that, yes.  Q. All right. So the controller is doing an LWAPP function that's real-time, right?  A. It states that it's doing a real-time radio resource management.").

a method requiring "two steps: a running step and a dividing step."[21]  The first step of the asserted claims, the dividing step, involves "dividing a short-range communication protocol."[22]  The second step requires, "for each connection of a mobile unit with a Base Station, running an instance" of the protocol.[23]  Both the "dividing" and the "running" element are requirements of every single asserted claim.[24]

Because Commil has presented no evidence in its case-in-chief that Cisco – or anyone else – performs each step of the claimed method, and because Commil's own evidence demonstrates that Cisco design engineers divide the protocol while end-users actually run the protocol, it cannot show that any single party carries out all claims of the patented method.[25]

**C.    There Is No Evidence that Cisco and its Customers Jointly Infringe the '395 Patent**

Commil also failed to meet its evidentiary burden to support a claim of joint infringement by Cisco and its customers.  As set out above, Commil's evidence clearly demonstrates that two parties are required to participate in any act of alleged infringement here: (1) the Cisco design engineers who divide the protocol, and (2) the end-customers who actually run the divided protocol.[26]  Therefore, to establish infringement here under a theory of "divided

---

[21]    McAlexander testimony, Trial Tr. Vol. 2 at 4:4-8, May 11, 2010; *see also id.* at 93:20-94:8.

[22]    *See* PTX 001 at 39:15-29.

[23]    *Id.*

[24]    *Id.* at Claims 1-6, 8.

[25]    McAlexander Testimony, Trial Tr. Vol. 2. at 94:17-18, May 11, 2010 ("Cisco divided the protocol."); *id.* at 95:4-7.

[26]    McAlexander Testimony, Trial Tr. Vol. 2. at 94:17-18, May 11, 2010 ("Cisco divided the protocol."); *id.* at 95:4-7.

infringement" Commil must establish that Cisco acted as a "mastermind" by exercising "control or direction" over its customers' use of the accused products.  *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008).

More specifically, the level of "control or direction" required to sustain a finding of liability under divided infringement has been established as a contractual obligation, or an agency relationship equivalent to one giving rise to vicarious liability, *see, e.g.*, *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008); *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 834 (analyzing district court cases following *BMC* and *Muniauction*) (citations omitted), and situations in which the parties are dealing at an "arms-length" do not give rise to liability under the "direct or control" standard.  *Muniauction*, 532 F.3d at 1329.  It is not sufficient to show that the alleged infringer was "giving instruction or prompts to the third party in its performance of the steps necessary to complete infringement, or facilitating . . . the third party's infringement" without a showing of the requisite level of direction or control.  *Emtel*, 583 F. Supp. 2d at 834 (citations omitted); *Golden Hour Data Sys., Inc. v. Emscharts, Inc.*, Civ. A. No. 2:06-CV-381, 2009 WL 943273 at *4 (E.D. Tex. 2009).

Here, Commil has put forward no evidence demonstrating that Cisco instructs or directs customers to use the accused Cisco products in **any** particular fashion in a "mastermind" or agency relationship, much less in the allegedly infringing manner.  Commil therefore cannot establish any act of direct joint infringement as a matter of law.  *See, e.g.*, *Muniauction,* 532 F.3d at 1330; *Emtel*, 583 F. Supp. 2d at 834.

**D.    Cisco Is Not Liable as a Matter of Law for Induced or Contributory Infringement**

Finally, in addition to its failure to establish any predicate act of direct infringement, Commil also failed to establish that Cisco acted with the state of mind necessary for a claim of induced or contributory infringement.  To show inducement, Commil must establish that Cisco (1) was aware of the patent; (2) knowingly induced infringing acts; and (3) possessed a specific intent to encourage direct infringement, not merely the intent to encourage the acts themselves.  *DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1304-06 (Fed. Cir. 2006).

Similarly, to show contributory infringement, Commil must show not only that there are no substantial non-infringing uses of the accused products, but that Cisco had "knowledge that the component was especially made or adapted for a particular use" and "knowledge of the patent which proscribed that use."  *MIT v. Abacus Software, Inc.*, Civil Action No. 5:01-CV344, 2004 WL 5268128, at *29 (E.D. Tex. Aug. 24, 2004) (quoting *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 n.4 (Fed. Cir. 1990)).  A particular non-infringing use is not substantial if it is "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental."  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009).

Here, Commil cannot meet any of these elements.  First, it is beyond dispute that a Cisco controller cannot constitute an "apparatus for routing telephone calls" if there are no telephone calls to be routed—even if the controller is capable of routing phone calls.  *See Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*, 243 Fed. Appx. 603, 606-607 (Fed. Cir. 2007) ("It is not enough that a claimed step be 'capable' of being performed . . . A party that does not perform a claim step does not infringe a method claim merely because it is capable of doing

so.").  Thus, even if the accused Cisco controller were capable of routing telephone calls at all times, that would not mean there is no substantial non-infringing use for the accused products.

In *Vita-Mix*, the Federal Circuit considered a patent directed to a method of preventing the formation of air pockets in a blender by inserting a stick into the blender.  *See* 581 F.3d at 1321.  The patent was limited to the insertion of the stick and did not cover a stirring action.  *Id.* at 1322.  The accused product was a blender sold with a "stir stick," and the court assumed *arguendo* that insertion of the stir stick would infringe the patent, but that stirring with the stir stick would not.  *Id.* at 1321, 1327.  Despite the fact that the stir stick was at all times capable of being stirred once it was inserted into the blender, the Federal Circuit held that "no reasonable jury could find that using the stir stick to stir . . . is an insubstantial use of the accused device"  and affirmed judgment of no contributory infringement.  *Id.* at 1328.

The instant case presents the same predicate facts that guided the Federal Courts decision in *Vita-Mix*.  Even assuming that Cisco's products infringed the '395 patent by routing telephone calls – and they do not – the mere fact that the controller is at all times capable of an infringing use has no bearing on whether the non-infringing use is substantial.  Like the stir stick in *Vita-Mix*, "[i]t is indisputedly possible to use the accused device . . . without ever practicing the claimed method."  *Id.* at 1329.  Nor has Commil proffered any evidence in the record suggesting that Cisco's customers' use of accused products for non-telephony purchases is rare or unusual; to the contrary, the evidence shows that a vast majority of Cisco's customers do not use the accused products for voice.  More generally, the accused access points can be converted from lightweight to autonomous access points through a simple change in the software a customer uses—a substantial non-infringing use under any infringement theory, and one on

which Commil has presented no evidence whatsoever.[27]  On this basis alone, Cisco's motion for judgment as a matter of law should be granted.

Commil also has not met its burden on indirect infringement for a second and independent reason:  it cannot show that Cisco "knew or should have known [its] actions would induce actual infringements."  *EpicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608, 639 (E.D. Tex. 2007).  As the Federal Circuit has made clear, inducement "'requires evidence of ***culpable conduct***, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'"  *Id.* (quoting *DSU*, 471 F.3d at 1306) (emphasis added).  Mere knowledge of the potentially infringing acts will not suffice to establish liability.  *DSU*, 471 F.3d at 1306.

Here, Commil has presented no evidence that Cisco ever possessed the specific intent to induce infringement required under *DSU*.  Indeed, the sole evidence Commil provided regarding Cisco's state-of-mind was once again from Mr. McAlexander, who testified that his opinion that "Cisco induced others to infringe" the claims of the '395 patent was based on "some of Cisco's technical documents," including "marketing literature" and "product literature that is promoting the products to be configured" "using the LWAPP, CAPWAP protocol."[28]  But the mere marketing and sales of the accused devices are not sufficient to support a finding of indirect infringement, particularly when they could just as easily lead to non-infringing uses—such as data communications or deployment of the products as autonomous devices—as they could the

---

[27]    DTX 1430-0001 ("The Cisco Aironet 1240AG and Aironet 1240G Series can be ordered with Cisco IOS software to operate as an autonomous access point . . . ."); DTX 1338-0001 ("[T]he Cisco Aironet 1300 Series can be deployed as an autonomous access point or bridge, providing intelligent network services as a standalone device . . . .").

[28]    *See* McAlexander testimony, Trial Tr. Vol. 1 at 127:20-128:1, 130:11-17, May 11, 2010; McAlexander testimony, Trial Tr. Vol. 2 at 69:13-70:7, May 11, 2010.

allegedly infringing use.  *See EpicRealm*, 492 F. Supp. 2d at 639 (granting summary judgment of

no induced infringement where "the actions alleged to induce infringement could also lead to

noninfringing activity, and there is no encouragement of the infringing activity in particular");

*Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003) (upholding grant of

summary judgment for no induced infringement because, "[e]specially where a product has

substantial noninfringing uses, intent to induce infringement cannot be inferred even when the

defendant has actual knowledge that some users of its product may be infringing the patent").

Simply put, Cisco cannot have "known" its products would lead to infringement when data users

or users who deploy the accused access points autonomously do not infringe the patent at all.[29]

In conclusion, Commil has put forward no evidence showing that Cisco was even

aware of the '395 patent prior to Commil's filing suit.[30]  At the very least, Cisco respectfully

---

[29]     Even if Commil had provided evidence suggesting that Cisco provided instructions to use
the accused products in the allegedly infringing fashion—it did not—such evidence
would not be enough to establish that Cisco possessed the intent to induce infringement.
*See, e.g.*, *Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, No. SA-03-CV-832-WRF, 2007
WL 1113088, at *6 (W.D. Tex. April 4, 2007) (finding jury's verdict of no induced
infringement was supported by substantial evidence where "[p]laintiffs failed to establish
the specific intent necessary" because "[t]he evidence only shows that BlueSky
encouraged people to use their own product, not to engage in infringing activity"); *Alloc,
Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) (upholding
administrative judge's finding of no induced infringement where there was "no evidence"
that defendants "intended to induce others to infringe the asserted patents," even where
defendants had "provided installation instructions that require customers to follow the
steps of [plaintiff's] claimed method").

[30]     Commil's exhibit list contains a patent application and resulting patent that was assigned
to an affiliate of Cisco, both of which cite the '395 patent as prior art.  *See* PTX 0332,
PTX 0333.  These documents are insufficient as a matter of law to establish that Cisco
possessed the requisite state of mind.  Cisco is not aware of any case law providing that a
mere citation to a patent-in-suit (1) in another patent, (2) in a different field (the
synchronization of Base Stations in cellular communications), and (3) that was assigned
to a defendant's affiliate four years before the commencement of an infringement suit is
enough even to establish *knowledge* of the patent-in-suit, let alone intent to induce
infringement, and Commil has proffered no such law.

submits, Commil is not entitled to recover any pre-suit damages for indirect infringement as a matter of law.[31]

## V.    **CONCLUSION**

For the forgoing reasons, Cisco respectfully requests that the Court grant Cisco's motion for judgment as a matter of law.

---

[31]    *See MIT*, 2004 WL 5268128, at *30 ("Without knowledge of the patent, there can be no indirect infringement."); *Union Pacific Res. Co. v. Chesapeake Energy Corp.*, No. Civ. A 4:96-CV-726-Y, 1998 WL 34359124, at *5 (N.D. Tex. May 20, 1998) (granting summary judgment of no induced infringement where "there remains no evidence that [defendant] had any knowledge of the allegedly infringed patent").

Dated: May 13, 2010                 Respectfully submitted,

                                */s/ Jeffrey E. Ostrow with permission*
                                  *by Michael E. Jones*
                                  Jeffrey E. Ostrow
                                  Harrison J. Frahn IV
                                  Patrick E. King
                                  SIMPSON THACHER & BARTLETT, LLP
                                  2550 Hanover Street
                                  Palo Alto, CA 94304
                                  Tel: (650) 251-5000
                                  Fax: (650) 251-5002
                                  jostrow@stblaw.com
                                  hfrahn@stblaw.com
                                  pking@stblaw.com

                                  Otis Carroll
                                  Texas Bar No. 03895700
                                  Patrick Kelley
                                  Texas Bar No. 11202500
                                  IRELAND, CARROLL & KELLEY, P.C.
                                  6101 S. Broadway, Suite 500
                                  Tyler, TX 75703
                                  Tel: (903) 561-1600
                                  Fax: (903) 581-1071
                                  Fedserv@icklaw.com

                                  Michael E. Jones
                                  Patrick C. Clutter, IV
                                  POTTER MINTON P.C.
                                  110 N. College
                                  500 Plaza Tower
                                  Tyler, TX 75702
                                  Tel: (903) 597-8311
                                  Fax: (903) 593-0846
                                  mikejones@potterminton.com
                                  patrickclutter@potterminton.com

                                  **Counsel for Defendant and Counter-Claimant Cisco System**

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 13th day of May, 2010.  Any other counsel of record will be served via first class U.S. mail.


*/s/ Michael E. Jones*
Michael E. Jones