UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| COMMIL USA, LLC, <br><br> Plaintiff, <br> v. <br><br> CISCO SYSTEMS, INC., <br><br> Defendant. | CIVIL ACTION NO. 2:07-cv-341-CE |

**DEFENDANT CISCO SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT AS MATTER OF LAW ON DAMAGES**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**

I. STATEMENT OF ISSUE ................................................................................................ 1

II. INTRODUCTION ......................................................................................................... 1

III. LEGAL STANDARD .................................................................................................... 1

IV. ANALYSIS .................................................................................................................... 2

    A. There Is No Evidentiary Basis for Applying the Entire Market Value Rule .......... 2

    B. Commil Has Failed to Demonstrate That a 5% Royalty Rate Is Reasonable ......... 5

V. CONCLUSION ............................................................................................................... 7

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anthony v. Chevron USA, Inc.*, 284 F.3d 578 (5th Cir. 2002) .......................................................... 2

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*,
   350 F.3d 1327 (Fed. Cir. 2003).................................................................................................. 3

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116
   (S.D.N.Y. 1970) ......................................................................................................................... 5

*Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617 (5th Cir. 2008) .................................................. 2

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ................................ 2, 3, 4, 5

*MacArthur v. Univ. of Tex. Health Ctr. at Tyler*, 45 F.3d 890 (5th Cir. 1995) ............................... 2

*ResQNet v. Lansa*, 594 F.3d 860 (Fed. Cir. 2010)....................................................................... 5, 7

*Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995)......................................... 2, 3, 4

*Summit Tech., Inc. v. Nidek Co., Ltd.*, 363 F.3d 1219 (Fed. Cir. 2004).......................................... 2

*Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364 (Fed. Cir. 2002) ............................. 7

## FEDERAL STATUTES

Fed. R. Civ. P. 50(a) ........................................................................................................................ 2

Federal Rule of Civil Procedure 50(a) ............................................................................................ 1

Pursuant to Federal Rule of Civil Procedure 50(a), Defendant Cisco Systems, Inc. ("Cisco"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of Motion for Judgment as a Matter of Law on Damages.

## I.     STATEMENT OF ISSUE

Should Cisco ultimately be found liable for infringement of United States Patent No. 6,430,395 (the "'395 Patent"), Cisco moves for judgment as a matter of law that (1) the entire market value rule is inapplicable to Commil's claims and that (2) Commil has failed to establish that the licenses upon which it relies in choosing a 5% royalty rate are comparable.

## II.    INTRODUCTION

To recover the full value of sales of the accused products under the entire market value rule, Commil USA, LLC ("Commil") must demonstrate that the patented features are the basis for consumer demand for those products. But Commil presented no evidence at trial that advanced voice features – the only use of Cisco's accused products that could possibly infringe the claims of the '395 patent as construed by the Court – drive customer demand for the accused products, much less that none of the other numerous management, security, mobility, or other un-accused features of the products drive demand. The entire market value rule is therefore inapplicable as a matter of law.

In addition, Commil has failed to lay an evidentiary foundation demonstrating that the licenses on which it relies to calculate a 5% royalty rate are comparable to the '395 patent. Therefore, Commil has failed to prove that a 5% royalty rate is appropriate in computing damages.

## III.   LEGAL STANDARD

Rule 50(a) provides for judgment as a matter of law where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a

legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). As JMOL is a procedural issue not unique to patent law, Fifth Circuit law applies. *See Summit Tech., Inc. v. Nidek Co., Ltd.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). Under Fifth Circuit law, the party opposing the motion for judgment as a matter of law must establish a conflict in substantial evidence on *each* essential element of their claim in order to survive the motion.[1]

## IV.   ANALYSIS

### A.   There Is No Evidentiary Basis for Applying the Entire Market Value Rule

The "entire market value rule" allows the owner of a component invention to capture the entire value of a larger allegedly infringing product if the patent holder carries the burden of establishing that the patented technology "was of such paramount importance that it substantially created the value of the component parts." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (citation omitted). Here, to establish that its recovery should be based on the entire value of each accused product, Commil must show that "the patent-related feature is the basis for customer demand." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (citation omitted). The entire market value rule thus places a "limitation on damages, when recovery is sought on sales of unpatented components sold with patented components." *See Rite-Hite*, 56 F.3d at 1550. Commil must therefore present evidence showing that the patented features, rather than other positive features embodied by the accused products, drive customer demand.

The Federal Circuit has repeatedly vacated damages awards that are improperly based on the value of all sales of accused products where the patented feature is but a small

---

[1] *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002). A mere scintilla of evidence is insufficient to present a question for the jury. *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 622 (5th Cir. 2008) (citing *MacArthur v. Univ. of Tex. Health Ctr. at Tyler*, 45 F.3d 890, 896 (5th Cir. 1995)).

component of those products.  For example, in *Lucent*, the Federal Circuit recently vacated a damages award based on the entire market value rule because Lucent "did not carry its evidentiary burden of proving that anyone purchased [the accused product] because of the patented method."  *See* 580 F.3d at 1337-38.  In *Lucent*, the patented feature was a "date-picker tool" incorporated into Microsoft Office software.  *Id.* at 1337.  The date-picker's role was "minor" when compared to "the relative importance of certain other features, e.g. email," the "vast majority" of which, "when used, do not infringe."  *Id.*  The Court relied on Lucent's failure to put forward evidence showing "that anybody anywhere at any time ever bought Outlook . . . because it had a date picker."  *Id.* At 1337-38.

Similarly, in *Rite-Hite*, the Federal Circuit vacated a damages award based on the entire value of sales of dock levelers.  *See* 56 F.3d at 1551.  The defendant sold the dock levelers – which did not infringe the patent-in-suit – along with a vehicle restraint device that secured the truck to the loading dock and that was alleged to infringe the patent-in-suit.  *Id.*  The Federal Circuit held that, while the vehicle restraint device and the dock leveler "may have been used together, they did not function together to achieve one result."  *Id.*  The court therefore held that "the district court erred as a matter of law in including [sales of the dock levelers] within the compensation base."  *Id.*

Finally, in *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, the Federal Circuit vacated a damage award as improperly based on the full value of sales of a device used to produce petroleum from a well that embodied both an infringing and a non-infringing method.  *See* 350 F.3d 1327, 1330-31, 1345-46 (Fed. Cir. 2003).  Evidence in the trial record allowed the court to apportion between consumer demand for the infringing feature and demand for the non-infringing feature.  *Id.* at 1346.  The Federal Circuit held that the

plaintiff was not entitled to recover damages for "profits that could fairly be allocated to customer demand related to the features" that did not infringe the patent-in-suit. *Id.*

Here, Commil has not met its burden to show that it is entitled to capture the full value of Cisco's sales of the accused products. Joseph McAlexander, Commil's technical expert, admitted that "[t]he accused products can invoke many different patents"[2] and that Cisco had multiple patents that might apply to the accused products.[3]

Moreover, Commil's damages expert, Carlile, testified that he simply computed damages by applying a royalty rate to Cisco's *total* domestic sales of the accused products. Like the *Lucent* plaintiff, Commil has not put forth any evidence showing either (i) that any of those sales—let alone ***all*** of those sales—are attributable to the alleged infringement or (ii) that customers choose to buy Cisco's products because of the allegedly infringing features. *See Lucent*, 580 F. 3d at 1337-38. Carlile never discusses the many other positive features in the accused products, none of which are alleged to accuse the, '395 patent, including numerous security and management features captured in the more than ***100*** patents pertaining to WiFi. Like the *Rite-Hite* plaintiff, Commil failed to put forward evidence suggesting that any of these non-infringing uses necessarily function together with the allegedly infringing use "to achieve one result." *See Rite-Hite*, 56 F.3d at 1551. For these reasons, Commil is precluded from relying on the entire market value rule under precedent followed by this Court. *See Lucent*, 580 F. 3d at 1337-38; *Rite-Hite*, 56 F.3d at 1551.

---

[2]   McAlexander testimony, Trial Tr. Vol. 2 at 130:14-16, May 11, 2010.

[3]   McAlexander testimony, Trial Tr. Vol. 2 at 127:6-18, May 11, 2010.

### B. Commil Has Failed to Demonstrate That a 5% Royalty Rate Is Reasonable

One factor bearing on whether a proffered royalty rate is reasonable is "[t]he portion of the profit or of the selling price that may be customary in the particular business or in *comparable* businesses to allow for the use of the invention or analogous inventions." *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (emphasis added). A royalty rate is not reasonable where it is premised on licenses that are not comparable to a license for the patent-in-suit. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010); *see also* Hearing Tr. at 7:1-11, May 7, 2010 (requiring Commil's expert to lay a foundation that the licenses upon which it relies "involve comparable technology under Georgia Pacific Factor 12"). Commil bears the burden of proving that the licenses its expert selected to rely on are sufficiently comparable to support a damages award. *Lucent*, 580 F.3d at 1329.

Carlile's own testimony demonstrates that the licenses on which he relied in choosing a 5% royalty rate are inapposite to the technology claimed by the '395 patent. Commil's reliance on license agreements that are not technologically germane is improper as a matter of law. *ResQNet*, 594 F.3d at 873. ("A reasonable royalty based on such speculative evidence violates the statutory requirement that damages under § 284 be 'adequate to compensate for the infringement.'"). For example, Commil relies on a summary of 63 licenses, some as old as 1987, rather than the actual licenses themselves.[4] The licenses involved exclusive rights, related party transactions, the granting of rights *other* than patent rights, and clearly unrelated technology.[5] Indeed, three of the seven licenses Commil sought to introduce at trial

---

[4]   *See* PTX0006.

[5]   *See id.*

were so completely inapposite that the Court excluded them altogether.[6]  Respectfully, Cisco maintains that the remaining licenses introduced at trial are also incomparable.  Among other things:

- the Repeater technology license was a non-arms-length technology license agreement that appears to cover, *inter alia*, a patent that had not yet issued;

- the Zingerang technology license was also a technology license agreement that was exclusive, worldwide, and covered at least three patents, trademarks, know-how, and a proprietary software system;

- the Hyundai technology license was entered into in conjunction with a non-compete agreement and a $3.4M loan; and

- the Redox technology license is an exclusive, broad technology license to defined "Subject Technology" that includes an undisclosed set of patents, pending patents, and future patents and involves payment in common stock.[7]

None of these licenses is remotely comparable to the hypothetical license negotiation at issue here.

*ResQNet* is instructive.  In that case, as here, Plaintiff's expert relied on licenses that "furnished finished software products and source code, as well as services such as training, maintenance, marketing, and upgrades," rather than pure patent rights.  *Id*. at 870.  The Federal Circuit held that reliance on these unrelated licenses was an error of law and vacated the

---

[6]   The excluded licenses relied upon by Carlile were the Metalink license (which involved a repayment of R&D funding provided by the Israeli government and was not an arms-length commercial transaction), the Siemens license (which involved exclusive worldwide rights and a sale of technical know-how), and the SkyWay license (which was not arms-length and granted exclusive rights).  *See* PTX0005.

[7]   *See* PTX0005.

damages award. *See id.* at 873. The Federal Circuit further held that a patentee may not recover a reasonable royalty based on the sale of a business where the value is tied to goodwill rather than sales of infringing products. *See Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1376-77 (Fed. Cir. 2002) (affirming district court's grant of judgment as a matter of law). Carlile's reliance on transactions here that involved trademarks, software, know-how, non-compete agreements, and other incomparable characteristics renders those licenses of *de minimis* (if any) value in determining a reasonable royalty.

For these reasons, Commil has failed to meet its evidentiary burden of establishing the comparability of the licenses its expert relied on in selecting a 5% royalty rate. Cisco is therefore entitled to judgment as a matter of law that any damages award cannot be based on these licenses and that 5% is not a reasonable royalty rate.

## V.  CONCLUSION

For the forgoing reasons, Cisco respectfully requests that the Court grant Cisco's motion for judgment as a matter of law.

Dated: May 13, 2010 Respectfully submitted,

*/s/ Jeffrey E. Ostrow with permission by Michael E. Jones*
Jeffrey E. Ostrow
Harrison J. Frahn IV
Patrick E. King
SIMPSON THACHER & BARTLETT, LLP
2550 Hanover Street
Palo Alto, CA 94304
Tel: (650) 251-5000
Fax: (650) 251-5002
jostrow@stblaw.com
hfrahn@stblaw.com
pking@stblaw.com

Otis Carroll
Texas Bar No. 03895700
Patrick Kelley
Texas Bar No. 11202500
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, TX 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
Fedserv@icklaw.com

Michael E. Jones
Patrick C. Clutter, IV
POTTER MINTON P.C.
110 N. College
500 Plaza Tower
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 593-0846
mikejones@potterminton.com
patrickclutter@potterminton.com

**Counsel for Defendant and Counter-Claimant Cisco System**

## CERTIFICATE OF SERVICE

  This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 13th day of May, 2010.  Any other counsel of record will be served via first class U.S. mail.

                  /s/ Michael E. Jones
                  Michael E. Jones