UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

COMMIL USA, LLC,

                  Plaintiff,

     v.

CISCO SYSTEMS, INC.,

                 Defendant.

CIVIL ACTION NO. 2:07-cv-341-CE

## DEFENDANT CISCO SYTEMS INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON DAMAGES

## TABLE OF CONTENTS

STATEMENT OF ISSUE ................................................................................................ 1

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD ..................................................................................................... 2

ARGUMENT .................................................................................................................. 3

    **I.**    **There Is No Evidentiary Basis for Awarding Damages for Direct Infringement** ................................................................................................ 3

    **A.**    **The Damages Commil Has Proposed for Cisco's Alleged Inducement Are Unsupported by the Record** ................................................................... 5

        **1.**    **Commil Has Failed To Introduce Legally Sufficient Evidence to Support an Award of Pre-Suit Damages** ............................................ 5

        **2.**    **There Is No Evidentiary Basis for Applying the Entire Market Value Rule** ........................................................................................... 5

        **3.**    **Commil Has Failed to Demonstrate that a 5% Royalty Rate Is Reasonable** .............................................................................. 12

CONCLUSION ............................................................................................................ 15

## FEDERAL CASES

*Alcatel USA, Inc. v. Cisco Sys., Inc.*,
  239 F. Supp. 2d 660, (E.D. Tex. 2002) .................................................................. 5

*Anthony v. Chevron USA, Inc.*,
  284 F.3d 578 (5th Cir. 2002) ................................................................................ 2

*Boston Scientific Corp. v. Johnson & Johnson*,
  550 F.Supp.2d 1102 (N.D. Cal. 2008) .................................................................. 4

*Centocor Ortho Biotech, Inc. v. Abbott Laboratories*,
  --- F.3d ----, 2011 WL 635291 (Fed. Cir. Feb. 23, 2011) .................................... 2

*DSU Med. Corp. v. JMS Co., Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006) ............................................................................ 5

*Embrex, Inc. v. Service Engineering Corp.*,
  216 F.3d 1343 (Fed. Cir. 2000) ............................................................................ 4

*Ferguson Beauregard/Logic Controls v. Mega Systems, L.L.C.*,
  No. Civ.A. 6:99CV437, 2001 WL 34771614, at *94 (E.D. Tex. 2001) .................. 5

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys, LLC*,
  350 F.3d 1327 (Fed. Cir. 2003) .......................................................................... 11

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) .................................................................... 12

*Hagan v. Echostar Satellite, L.L.C.*,
  529 F.3d 617 (5th Cir. 2008) ................................................................................ 3

*Harris Corp. v. Ericsson, Inc.*,
  417 F.3d 1241 (Fed. Cir. 2005) ............................................................................ 4

*IP Innovation L.L.C. v. Red Hat, Inc*,
  705 F.Supp.2d 687 (E.D. Tex. 2010) .................................................................. 11

*Kransco Manuf., Inc. v. Hayes Spec. Corp.*,
  77 F.3d 505, 1996 WL 30787 (Fed. Cir. 1996) .................................................... 4

*Kyocera Wireless Corp. v. Internat'l Trade Comm.*,
  545 F.3d 1340 (Fed. Cir. 2008) ............................................................................ 3

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*,

895 F.2d 1403 (Fed. Cir. 1990)........................................................................................ 4

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)........................................................... 6, 10, 12, 13

*MacArthur v. Univ. of Tex. Health Ctr. at Tyler*,
45 F.3d 890 (5th Cir. 1995) .......................................................................... 3

*Mirror Worlds, LLC v. Apple, Inc.*,
Case No. 6:08-cv-88-LED (E.D. Tex. Apr. 4, 2011)......................................... 6

*Mirror Worlds, LLC. v. Apple, Inc.*,
Case No. 6:08 CV 88 (E.D. Tex. Apr. 4, 2011)................................................ 3

*ResQNet v. Lansa*,
594 F.3d 860 (Fed. Cir. 2010).................................................... 12, 14, 15

*Ricoh Co., Ltd. v. Quanta Computer Inc.*,
550 F.3d 1325 (Fed. Cir. 2009)..................................................................... 3

*Rite-Hite v. Kelley Co., Inc.*,
56 F.3d 1538, 1549 (Fed. Cir. 1995).......................................................... 6

*Transclean Corp. v. Bridgewood Svcs, Inc.*,
290 F.3d 1364, 1376-77 (Fed. Cir. 2002) ............................................... 15

*Trs. of Columbia Univ. in City of New York v. Roche Diagnostics GmbH*,
272 F. Supp. 2d 90 (D. Mass. 2002) .......................................................... 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
--- F.3d ----, 2011 WL 9738 (Fed. Cir. Jan. 4, 2011)...................................... 6, 9, 12

*Wordtech Sys., Inc v. Integrated Networks Solutions, Inc.*,
609 F.3d 1308, 1320 (Fed. Cir. 2010)...................................................... 12

## FEDERAL RULES

Federal Rule of Civil Procedure 50(a) ...................................................... 1, 2

Pursuant to Federal Rule of Civil Procedure 50(a), Defendant Cisco Systems, Inc. ("Cisco"), by and through its undersigned counsel, respectfully moves for judgment as a matter of law on damages.

## STATEMENT OF ISSUE

Cisco hereby respectfully moves for judgment as a matter of law that (1) there is no evidentiary basis to award damages for direct infringement based on Commil's concession that it is not seeking any such damages in this trial, and that (2) the damages proposed by Commil's damages expert for inducement are excessive and unsupported, because: (a) Commil is not entitled to damages for any period prior to the date it filed this lawsuit; (b) the entire market value rule is inapplicable to Commil's claims; and (c) Commil has failed to establish that the licenses upon which it relies in choosing a 5% royalty rate are comparable.

## INTRODUCTION

Whether for direct or indirect infringement, Commil bears the burden of establishing a reasonable royalty that is firmly tied to the facts of the case. It has uniformly failed to do so. On the issue of Cisco's direct infringement, Commil abandoned any claim for such damages prior to trial, and accordingly has not put forth any evidentiary foundation whatsoever for awarding damages. Because Commil adduced no evidence regarding the damages base for Cisco's internal use of the accused products, damages for Cisco's alleged direct infringement must be zero.

In addition, Commil's proposed damages for inducement are excessive and unsupported in the record. *First*, Commil's proposed damages base improperly includes revenue for periods prior to the date it filed this suit. Because there is no legally sufficient evidence that Cisco had knowledge of the patent-in-suit prior to the date the complaint was filed, as a matter of law it cannot be liable for inducement before that date.

*Second*, Commil cannot capture the entire market value of sales of the accused products, because it has failed to demonstrate that the allegedly patented features are **the** basis for consumer demand.  Commil has presented no evidence at trial that features relating to seamless mobility during phone calls—the primary application of the patented invention—drive customer demand for the accused products.  To the contrary, Commil's own expert **conceded** that other factors, such as security and the benefits of the 802.11 protocol itself—which Commil's expert admitted are not claimed in the patent—are likewise very important drivers of demand, and he could not adduce actual evidence (as opposed to his conclusory opinion) that any allegedly patented feature is the primary driver of demand.  Thus, the entire market value rule is inapplicable here as a matter of law.

*Third*, Commil has failed to lay an evidentiary foundation demonstrating that the licenses on which it relies to calculate a 5% royalty rate are comparable to the '395 patent under governing Federal Circuit case law, and thus has failed to prove that a 5% royalty rate is legally permissible.

## **LEGAL STANDARD**

Rule 50(a) provides for judgment as a matter of law where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a).  As JMOL is a procedural issue not unique to patent law, Fifth Circuit law applies.  *See Centocor Ortho Biotech, Inc. v. Abbott Laboratories*, --- F.3d ----, 2011 WL 635291, at *4 (Fed. Cir. Feb. 23, 2011).  Under black-letter Fifth Circuit law, the party opposing the motion for judgment as a matter of law must establish a conflict in substantial evidence on **each** essential element of its claim in order to survive the motion.  *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002).  A mere scintilla of evidence is insufficient to present a question to the jury.  *Hagan v.*

*Echostar Satellite, L.L.C.*, 529 F.3d 617, 622 (5th Cir. 2008) (citing *MacArthur v. Univ. of Tex.*

*Health Ctr. at Tyler*, 45 F.3d 890, 896 (5th Cir. 1995)); *Mirror Worlds, LLC. v. Apple, Inc.*, Case

No. 6:08 CV 88, slip op. at 43 (E.D. Tex. Apr. 4, 2011) (Davis, J.) ("[T]he party with the burden

of proof must present sufficient evidence as to each and every element required in its cause of

action.  This is often a painstaking task—especially in a complex patent case—but it is

important.").[1]

## ARGUMENT

### I.      There Is No Evidentiary Basis for Awarding Damages for Direct Infringement

As this Court acknowledged at the pretrial hearing in this matter, Commil

abandoned any claim to damages for Cisco's direct infringement prior to trial.  *See* Pretrial

Hearing Tr. at 8:11-14 ("THE COURT: All right. Tell me, Mr. Werbner, if you-all aren't seeking

damages for direct infringement, why ought I allow any reference to prior determination of direct

infringement by Cisco?"), 24:17-18 ("[P]articularly when you're not seeking damages for the --

for the direct infringement.").  As intended, the evidence at trial was therefore properly limited to

"issues of induced infringement, that being Cisco's intent, active encouragement of direct

infringement by third parties, and damages caused thereby." *Id.* at 25:1-4.  Accordingly, there is

no evidence in the trial record to support an award of damages for Cisco's direct infringement.[2]

---

[1]    *Mirror Worlds* is attached hereto as Exhibit A.

[2]    Cisco maintains its position that the finding of direct infringement at the first trial was error
       for a variety of reasons, including that Commil failed to put forth any evidence at the first
       trial demonstrating that the accused products were tested or used in a manner that would
       infringe the patent.  *See, e.g., Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1336
       (Fed. Cir. 2009) (upholding grant of summary judgment of no direct infringement where
       plaintiff "failed to adduce any specific evidence that [defendant] tested any of the products
       accused of infringing the [patents-in-suit] or that it tested them in a way that would constitute
       infringement"); *Kyocera Wireless Corp. v. Internat'l Trade Comm.*, 545 F.3d 1340, 1353

In addition, although 35 U.S.C. § 284 dictates that the court award no less than a reasonable royalty once infringement is demonstrated, that does not supersede the plaintiff's obligation to put on evidence to support such an award and to prove the amount of a reasonable royalty by a preponderance of the evidence. *See, e.g.*, *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1407 (Fed. Cir. 1990) ("The statute [35 U.S.C. § 284] requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute.") (quoting *Devex Corp. v. General Motors Corp.,* 667 F.2d 347, 363 (3rd Cir. 1981)).  It is improper as a matter of law to award damages where the record lacks sufficient evidence on which to base any calculation.  *Boston Sci. Corp. v. Johnson & Johnson*, 550 F.Supp.2d 1102, 1120 (N.D. Cal. 2008) ("Where the record lacks any evidence of a reasonable royalty rate, the Federal Circuit has approved of awarding *'zero damages'* . . . .") (citing *Lindemann*, 895 F.2d at 1407) (emphasis added).  Because the damages proposed by Commil lack sufficient evidentiary basis to support a reasonable royalty calculation, no damages are appropriate here.[3]

---

(Fed. Cir. 2008) (affirming finding of no direct infringement where witnesses had "no specific knowledge" as to how testing was performed); *Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1256-57 (Fed. Cir. 2005) (vacating jury verdict of direct infringement due to lack of substantial evidence that defendant actually tested its products in infringing manner).

[3]   *Accord. Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1350 (Fed. Cir. 2000) (vacating district court's award of $500,000 in direct damages and remanding for a determination of a reasonable royalty based on defendants' infringing uses because the only cognizable infringement was testing, those tests were not shown to cause any loss of profits to plaintiff, and the record did not supply sufficient evidence to compute a reasonable royalty as required by 35 U.S.C. § 284); *Kransco Manuf., Inc. v. Hayes Spec. Corp.*, 77 F.3d 505, 1996 WL 30787, at *3 (Fed. Cir. 1996) (affirming district court award of nominal damages for infringement where patentee "presented no evidence on the issue of damages"); *Trs. of Columbia Univ. in City of New York v. Roche Diagnostics GmbH*, 272 F. Supp. 2d 90, 120

A.     **The Damages Commil Has Proposed for Cisco's Alleged Inducement Are Unsupported by the Record**

1.     Commil Has Failed To Introduce Legally Sufficient Evidence to Support an Award of Pre-Suit Damages

As set forth in greater detail in Cisco's Motion for Judgment as a Matter of Law of No Inducement and in prior briefing, Commil has failed to adduce legally sufficient evidence that Cisco knew of the patent-in-suit prior to the filing of this lawsuit. Thus, Cisco cannot be held liable for inducement prior to the date of the complaint. *See DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1304 (Fed. Cir. 2006). Commil's inclusion of pre-suit revenue in its damages calculation is therefore unsustainable as a matter of law.

2.     There Is No Evidentiary Basis for Applying the Entire Market Value Rule

The damages proposed by Commil's expert also lack a sufficient evidentiary basis because Commil's expert improperly applied the "entire market value rule" in calculating the damages base here. The "entire market value rule" only allows a patentee to capture the entire value of a component product that incorporates the claimed invention if the patent holder shows that the patented technology "was of such paramount importance that it ***substantially created*** the value of the components parts." *Rite-Hite v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir.

---

(D. Mass. 2002) (awarding $1 nominal damages where defendant was found to directly infringe but did not profit from the infringing use); *Ferguson Beauregard/Logic Controls v. Mega Systems, L.L.C.*, No. Civ.A. 6:99CV437, 2001 WL 34771614, at *94 (E.D. Tex. 2001) (adopting special master's conclusion that "in light of Mega Systems' failure of proof . . . of what a reasonable royalty would have been, the only conclusion that can be reached on the current record is that a reasonable royalty would be but nominal."), *rev'd on other grounds*, 350 F.3d 1327 (Fed. Cir. 2003); *see also Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp. 2d 660, 672, 676 (E.D. Tex. 2002) (granting motion for summary judgment of lack of remedy for claim for misappropriation of trade secrets, finding "little, if any sound evidence from which to derive a dollar value" for damages where there was no evidence of "lost profits suffered by Alcatel" or of "actual sales enjoyed by . . . Cisco with respect to the offending product from which a royalty or any measure of damages could be apportioned").

1995) (emphasis added) (citation omitted).  Thus, to establish that its recovery should be based on the entire value of each accused product, Commil must show that "the patented feature creates the 'basis for customer demand.'"  *Uniloc USA, Inc. v. Microsoft Corp.*, --- F.3d ---, 2011 WL 9738, at *22 (Fed. Cir. Jan. 4, 2011) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009)).  The entire market value rule thus places a "limitation on damages, when recovery is sought on sales of unpatented components sold with patented components."  *See Rite-Hite*, 56 F. 3d at 1550.  Where the entire market value rule does not apply, the patentee must provide evidence apportioning the defendant's profits between the patented and unpatented features, because "a patentee cannot justify using the entire market value of an accused product simply by asserting a low enough royalty rate."  *Mirror Worlds, LLC v. Apple, Inc.*, Case No. 6:08-cv-88-LED, slip op. at 31 (E.D. Tex. Apr. 4, 2011) (citing *Uniloc*, 2011 WL 9738, at *24).

Here, the primary application and value of the asserted patent is to mobility in telephony applications, as reflected by Commil's repeated references at trial to the benefit of avoiding "clicks" and "gaps" in communications, and by Mr. Carlile's references to the importance of voice over IP.[4]  Commil's lead inventor also testified that handover gaps are

---

[4]   April 5, 2011 Morning Trial Tr. (Commil Opening)  at 25:12-20 ("This controller can kind of manage all of this, and you won't have that ***gap or that click***, and you will have centralized control of these 10 or 12 access points from your controller, your switch, and you can, if you do it right, allow a ***seamless handover like you might have on your cell phone, without any clicks or gap, which would be very important if you want to have people on a telephone that's called voice over internet or VoIP or something***.") (emphasis added); 28:23-24 ("They'd be getting all these ***clicks and gaps***.") (emphasis added); 37:1-2 ("[Y]ou couldn't walk all over a hospital without getting ***the clicks and the gaps***.") (emphasis added); 106:5-8 ("And is that what resulted in the ability to roam seamlessly, moving from one access point to the other smoothly without ***the clicks and the gaps*** that had previously existed when that occurred?") (emphasis added); April 6, 2011 Afternoon Trial Tr. at 163:8 (Carlile Test.).

tolerable for data, but not for voice.[5]  Though Commil talked much of the value of mobility and

the "split MAC" to Cisco customers, both Mr. McAlexander and Mr. Carlile admitted on cross-

examination that the ability to roam between access points and the logical split of the MAC were

each in the 802.11 standard ***itself*** before the filing of the '395 Patent,[6] and that non-accused

features Cisco provides such as encryption constitute not only important drivers of demand, but

in some cases even the self-expressed most important factor to wireless customers.[7]

   Because 802.11 mobility existed prior to the '395 patent, any established demand

based on mobility is insufficient to establish demand based on the patented method.[8]  And

---

[5] April 7, 2011 Afternoon Trial Tr. at 110:19-24 (Testimony of Nitzan Arazi) ("QUESTION:
And would you agree that that handover gap is tolerable in data sessions?  ANSWER: From
the user scenario or usage or -- usage or -- I mean, from the point of view of experience of
users – users' experience they're tolerable, but not for voice.  That's what I know.").  Mr.
McAlexander's claim that "seamless handoff" might be ***more*** beneficial for large data
downloads than for voice communications, April 5, 2011 Afternoon Trial Tr. at 13:19-14,
was based on the erroneous presumption that a data connection could not be handed off
without dropping the connection entirely, which is flatly contradicted by his earlier testimony
that 802.11 already provided for mobility between access points.  April 6, 2011 Morning
Trial Tr. (McAlexander Test.) at 27:20-28:15.  Mr. McAlexander's contradictory and
erroneous testimony was discredited at trial, both by his own admissions, *id.*, and by Mr.
Arazi's later testimony.  Thus, the evidence is clear that any gap during handoff would only
be perceptible to someone engaged in voice communications.

[6] *See, e.g.*, April 6, 2011 Morning Trial Tr. (McAlexander Test.) at 27:20-28:15, 29:9-13.

[7] *See, e.g.*, April 6, 2011 Afternoon Trial Tr. at 123:13-21(Carlile Test.) ("A. I think security
. . . was the number one on that list, yes. Q. In that market study, that's what it was?  A. Yes.
Q. And it's saying that this feature that's in our spec sheet was the number one most
important thing when people made their decision whether to buy that product, correct?  A. It
was listed as the number one item, yes.").

[8] *See, e.g.*, April 6, 2011 Afternoon Trial Tr. at 36:1-3 ("That goes really directly to how the
Split MAC was necessary to serve customers' needs and the value of the technology to the
customer."); *id.* at 36:15-18 ("So I think we've heard a lot, but I just thought those comments
were about as clear as it gets on that you couldn't sell these systems if you didn't have that
Split MAC architecture that enabled mobility.").

though both Mr. McAlexander and Mr. Carlile conceded that the '395 patent is an improvement on existing technology,[9] Mr. Carlile made no attempt to apportion the demand attributable to the mobility solution allegedly claimed by the patent,[10] rather than the mobility and other functionality already built into the 802.11 standard.  On the contrary, Mr. Carlile flatly admitted that he just **_assumed_** that when Mr. O'Hara discussed the value of mobility to his products, he was referring to the features covered by the patent.[11]  Moreover, Mr. Carlile offered no evidence that Commil's approach to mobility or mobility during phone calls was the basis for demand, nor that it was a greater driver than non-patented features like encryption.

Without actual evidence that the claimed improvement was the primary driver of customer demand—rather than the 802.11 functionality itself, or the security and numerous other features without which the evidence demonstrated the customers would not have purchased the products[12]— Commil must properly apportion the value of the accused products between the patented and unpatented features.  *Uniloc*, 2011 WL 9738, at *22; *Mirror Worlds*, slip op. at 36.[13]  Commil's damages expert conceded that he did not do any such analysis here, and thus,

---

[9]   *See* April 6, 2011 Afternoon Trial Tr. at 103:2-13 (Carlile Test.).

[10]   *Id.* at 103:13.

[11]   *See* April 6, 2011 Afternoon Trial Tr. at 105:6-11 (Carlile Test.) ("Q.   (By Mr. Carroll) Yeah.  My question is, that you're assuming . . . when Bob O'Hara talked about mobility, he was talking about the teachings of that patent that we're in this Court over.  That's what you're assuming, correct?  A. That was my understanding of his answer.").

[12]   *See supra* n.7.

[13]   *See, e.g.*, April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 130:5-7 ("A. Yes, you would apportion if you thought the entire market value of the system or the product wasn't associated with the patented feature or benefit.").  Commil misapprehends the law when it argues that "[w]e're talking about just the two discrete products that have the Split MAC architecture.  I think it's important, because that's the smallest discrete product for sale that

without such analysis, the fact-finder must award no damages if the entire market value does not apply.[14]

The Federal Circuit has repeatedly vacated damage awards that improperly are based on the value of total sales of the accused products, where the patented feature is just one of many components of those products.  For example, just a few months ago, the Federal Circuit found that even where the patentee claimed not to rely on the entire market value rule and applied a purportedly lower-than-average royalty rate, references to the entire market value of the accused products constituted reversible error because the entire value was not shown to be derived from the patented contribution.  *Uniloc*, 2011 WL 9738, at *25.  The court there found that the patentee's repeated reference to the $19 billion in sales of the accused products and emphasis on the small fraction the royalty would represent of these total sales "tainted" the jury's damages award.  "The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."  *Id.* at *24.  Here, Commil has committed the exact same error, referring repeatedly to the "billion dollars" of sales Cisco has

---

includes that technology."  April 6, 2011 Afternoon Trial Tr. at 33:4-7.  The law requires analysis not of the "smallest discrete product," *id.*, but that *any* allegedly patented features within an accused product be apportioned according to their value.

[14]  April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 132:21-25 ("[Y]ou concede, do you not, that everything on that spec sheet you wouldn't be – weren't able to turn to the jury and say that's covered by that patent?  A. That's correct."); *id.* at 131:15-20; *id.* at 133:21-134:2 ("[If] the jury believes . . . that you didn't deliver the mail, so to speak, on your opinion that the sole driver for the sale of those devices is that patent, then . . . the only evidence from you for them to put in the base is zero, correct?  A.  *I haven't given then an apportioned value for the base, that's correct.*  Q. So the answer to my question is, yes, if they disagree with your opinion that that patent and that patent alone caused all these $1.2 billion worth of sales, *the only evidence that you can give them is no evidence, and therefore, a zero, correct?  A. Correct.*") (emphasis added).

made, even though there is no evidence that customer demand for the accused products is wholly or even substantially driven by the patented feature.[15]

Similarly, in *Lucent*, *supra*, the Federal Circuit vacated a damages award based on the entire market value rule because Lucent "did not carry its evidentiary burden of proving that anyone purchased [the accused product] because of the patented method." *See* 580 F. 3d at 1337-38.  In *Lucent*, the patented feature was a "date-picker tool" incorporated into Microsoft Office software. *Id.* at 1337.  The date-picker's role was "minor" when compared to "the relative importance of certain other features, e.g. email," the "vast majority" of which, "when used, do not infringe." *Id.*  The Court also relied on Lucent's failure to put forward evidence showing "that anybody anywhere at any time ever bought Outlook . . . because it had a date picker." *Id.*

In *IP Innovation L.L.C. v. Red Hat, Inc,.* Judge Rader, sitting in the Eastern District of Texas, reached a similar conclusion, excluding plaintiff's expert testimony where the

---

[15]  April 5, 2011 Morning Trial Tr. at 21:15-21 (Commil Opening Statement) ("We'll also show you that they did that in order to make hundreds of millions of dollars when they sold over a billion dollars of these infringing products to customers that they knew or should have known would be infringing the patent because of the instructions and the encouragement that they were giving to those customers."); *id.* at 29:3-4 ("[T]hese controllers that they sold a billion dollars worth."); *id.* at 29:19-22 ("[A]nd the evidence is, made a 50-percent profit margin on those billion dollars of sales, a 45- to 50-percent profit margin."); *id.* at 30:3-7 ("But yet there's such a demand among these large enterprises, the whole market that didn't exist before, that they sold over a billion dollars in the last five years at a 50-percent profit margin."); April 6, 2011 Afternoon Trial Tr. at 31:18-24 (Carlile Testimony) ("So from March 2005, the date of the hypothetical negotiation, through January of this year, January 2011, is $1,275,823,058.  And for that shorter time period, August 2007 through January 2011, which I'm not sure was said, but that's from the date of the filing of the litigation until January of this year, is $891,223,943."); *id.* at 65:15-20 ("Well . . . you don't have to think very hard to see that when a business . . . sells $1.2 billion of product in that timeframe that has contribution margins of roughly 50 percent, that that's a very important product line to them as a company.").

patented invention constituted a "relatively small component of the accused operating system," and plaintiff's expert "made no effort" to "account for the economic realities of this claimed component as part of a larger system." *IP Innovation L.L.C. v. Red Hat, Inc*, 705 F.Supp.2d 687, 690-91 (E.D. Tex. 2010) (Rader, J.); *see also Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys, LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) (vacating damage award as improperly based on the full value of sales and holding that plaintiff was not entitled to recover damages for "profits that could fairly be allocated to customer demand related to the features" that did not infringe patent-in-suit).

Here, Commil has not adduced legally sufficient evidence to show that it is entitled to the full value of Cisco's sales of the accused products.  Mr. Carlile, Commil's damages expert, simply computed damages by applying a royalty rate to Cisco's **total** domestic sales of the accused products.  Like the *Lucent* plaintiff, Commil has not put forth any evidence showing either (i) that all of those sales are attributable to the alleged infringement or (ii) that the allegedly infringing features form the basis for customers' purchasing decisions.  And like the *Uniloc* and *Mirror Worlds Rite-Hite* plaintiffs, Commil also has failed to put forward evidence suggesting how the accused product value should be allocated between the patented and non-patented features.  *Uniloc*, 2011 WL 9738, at *22, *Mirror Worlds*, slip op. at 36.  Without any such allocation, the testimony of its expert cannot form the basis for any damages award here as a matter of law.

In addition, the testimony at trial demonstrated that Commil's expert failed to take into account key evidence, including the fact that, at the time of the hypothetical negotiation, Commil, Ltd. had been willing to sell its entire patent portfolio for $1.2 million, but had no buyers, *see* April 6, 2011 Afternoon Trial Tr. at 82:19-83:3, 84:2-9 (Carlile Testimony), and in

fact went out of business eight months after the date of the hypothetical negotiation. *Id.* at 84:15-24. The evidence at trial further reflected that the patent-in-suit was sold just one year later for $400,000. *Id.* at 91:10-22.

              3.        <u>Commil Has Failed to Demonstrate that a 5% Royalty Rate Is Reasonable</u>

As the Federal Circuit repeatedly has held, "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." *Uniloc*, 2011 WL 9738, at *21. A royalty rate is unreasonable where it is premised on licenses that are not comparable to a license for the patent-in-suit. *See, e.g.*, *Wordtech Sys., Inc v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010); *ResQNet v. Lansa*, 594 F.3d 860, 873 (Fed. Cir. 2010); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (including, among the factors bearing on whether a proffered royalty rate is reasonable, "[t]he portion of the profit or of the selling price that may be customary in the particular business or in ***comparable*** businesses to allow for the use of the invention or analogous inventions") (emphasis added). In order for its proffered royalty rate to be sustained as a matter of law, Commil bears the burden of proving that the licenses its expert chose to rely on are sufficiently comparable to support the requested damages award. *Lucent*, 580 F.3d at 1329.

Commil has failed to introduce legally sufficient evidence to meet its burden. *First*, Mr. Carlile based his opinions on summaries of license agreements that lacked the detail necessary to accurately assess their comparability, and testified that he did not even have access to the underlying licenses themselves.[16] As a result, for each of the four licenses on which he

---

[16]   *See, e.g.*, April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 138:17-25.

relied (the Repeater, Zingerang, Redox, and Hyundai licenses), Mr. Carlile was ignorant as to critical pieces of information that he admitted were "factors of comparability."[17]  For instance, although Mr. Carlile admitted that exclusivity makes a license more valuable and is a factor that must be taken into account when determining comparability, he simply did not know whether or not the Repeater or Hyundai licenses were exclusive.[18]  He did not know whether the Zingerang or Redox licenses were related-party transactions.[19]  Mr. Carlile did not know whether the Repeater license had a compensation cap and did not know whether it was for antenna technology or not.[20]  With respect to the Hyundai license, Mr. Carlile was aware of, but did not look at, related agreements that were part of the same transaction.[21]  As a matter of law, a damages expert cannot rely upon a license if he does not have sufficient detail concerning the terms of the license to determine if the license is actually comparable.  *See Lucent*, 580 F.3d at 1328 (holding that patentee could not rely on summaries of agreement from which court could not ascertain underlying subject matter).  Mr. Carlile's opinion should be rejected as a matter of law based on his lack of sufficient information alone.  *See, e.g.*, *Lucent*, 580 F.3d at 1328 (rejecting as legally inadequate expert's reliance on summaries of license agreements that provided the jury with no way to "adequately evaluate[] the probative value of those agreements").

---

[17]   April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 153:12-13, 153:21, 154:2.

[18]   April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 153:8-22, 155:21-156:7.

[19]   April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 143:19-22; 149:19-24.

[20]   April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 153:1-7, 154:17-19.

[21]   April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 157:3-9.

Even if Mr. Carlile had gathered enough information to render an informed opinion regarding these licenses, moreover, the minimal information he did review demonstrated that these agreements are completely inapposite to the facts of this case.  For instance, Mr. Carlile knew, but did not discount for, the fact that the Zingerang agreement was for the purchase of an entire product line, conferred exclusive rights, and was between related parties.[22]  He similarly knew, but did not discount for, the fact that that same license had a $500,000 cap—notwithstanding its 5% royalty rate.[23]  Mr. Carlile knew, but did not discount for, the fact that the Redox license was for exclusive rights.[24]  He knew, but did not discount for, the fact that the Repeater license was a related party transaction.[25]  And he knew, but did not discount for, the fact that the Hyundai license was part of a transaction under which the licensor bought Hyundai's cellular infrastructure business.[26]

Commil's reliance on license agreements that are not factually germane is improper as a matter of law.  *See, e.g.*, *ResQNet*, 594 F.3d at 873 ("A reasonable royalty based on such speculative evidence violates the statutory requirement that damages under § 284 be 'adequate to compensate for the infringement.'").  In *ResQNet*, the plaintiff's expert, like Mr. Carlile, relied on licenses that "furnished finished software products and source code, as well as

---

[22]   April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 137:6-16; 141:8-16; 144:10-19.

[23]   April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 144:4-19.

[24]   April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 148:18-25.

[25]   April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 152:11-19.

[26]   April 6, 2011 Afternoon Trial Tr. (Carlile Test.) at 156:20-157:2.  Furthermore, Commil has argued in this case that cellular technology is not related technology.  April 5, 2011 Morning Trial Tr. at 95:24-96:1 (McAlexander Test.) ("Q. Is a cellular system considered a short-range communication system?  A. No, it is not.").

services such as training, maintenance, marketing, and upgrades" rather than patent rights. *Id*. at 870.  The Federal Circuit held that reliance on these unrelated licenses was an error of law and vacated the damages award.  *See*, *e.g.*, *ResQNet,* 594 F.3d at 873.  The Federal Circuit has similarly held that a patentee may not recover a reasonable royalty based on the sale of a business where the value is tied to goodwill.  *See Transclean Corp. v. Bridgewood Svcs, Inc.*, 290 F.3d 1364, 1376-77 (Fed. Cir. 2002) (affirming district court's grant of judgment as a matter of law).

Simply put, the testimony of Commil's expert himself established that he lacked sufficient information regarding these licenses even to determine if they are comparable, and that what little information he did have showed they were not comparable in any meaningful respect. These are precisely the types of agreements the Federal Circuit has excluded in *ResQNet* and *Lucent*.  Without these licenses, Mr. Carlile adduced no rational basis for his 5% royalty rate, and he offered no alternative rate or analysis.  All of this evidence should be excluded, and Cisco is entitled to judgment as a matter of law of no damages.

## CONCLUSION

For the forgoing reasons, this Court should grant Cisco's motion for judgment as a matter of law and find that Commil is not entitled to damages for either direct or indirect infringement.

Dated: April 7, 2011                    Simpson Thacher & Bartlett LLP


By: */s/ Jeffrey E. Ostrow, with permission by Michael E. Jones*
Henry B. Gutman (admitted *pro hac*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000

Fax: (212) 455-2502
hgutman@stblaw.com

Jeffrey E. Ostrow (admitted *pro hac*)
Harrison J. Frahn IV (admitted *pro hac*)
Patrick E. King (admitted *pro hac*)
SIMPSON THACHER & BARTLETT, LLP
2550 Hanover Street
Palo Alto, CA 94304
Tel: (650) 251-5000
Fax: (650) 251-5002
jostrow@stblaw.com
hfrahn@stblaw.com
pking@stblaw.com

Otis Carroll (Texas Bar No. 03895700)
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, TX 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
Fedserv@icklaw.com

Michael E. Jones (Texas Bar No. 10929400)
Patrick C. Clutter, IV (Texas Bar No. 24036374)
POTTER MINTON P.C.
110 N. College
500 Plaza Tower
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 593-0846
mikejones@potterminton.com
patrickclutter@potterminton.com

**Counsel for Defendant and Counter-Claimant
Cisco Systems, Inc.**

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 7th of April, 2011.  Any other counsel of record will be served via first class U.S. mail.

*/s/ Michael E. Jones*
Michael E. Jones

16